IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

EDWARD KAMEL ABRAHAM, JR.     :           CIVIL ACTION
                                    :           NO. 06-0058
        v.                          :
                                      :
DAVID DIGUGLEILMO, et al.          :

O'NEILL, J.                                       MAY 25, 2010

MEMORANDUM

      Plaintiff, a former inmate in the Pennsylvania state prison system, filed a four count

complaint alleging that his medical needs were mistreated while he was incarcerated. After more

than four years of proceedings, defendants Jude Germaine, Felipe Arias and Prison Health

Services filed a motion to dismiss. Defendant William E. Radle filed his own motion to dismiss.

Presently before me are both motions and plaintiff's response to each. For the following reasons,

I will grant in part and deny in part the motion filed by Germaine, Arias and PHS and I will grant

the motion filed by Radle.

BACKGROUND

I.      Factual Background[1]

      During the time period relevant to the allegations in this case, plaintiff was an inmate at

the State Correctional Institution at Graterford. On the afternoon of Sunday, January 25, 2004,

while confined in the restricted housing unit, plaintiff began experiencing pain and swelling in

his left testicle. When defendant nurse Sally Wirth made her 6:00 P.M. rounds, plaintiff

explained his symptoms to her and attempted to submit a "sick call slip," which is a formal

---

[1]      In reciting the factual background of this case, I take as true all well-pleaded
factual allegations in plaintiff's amended complaint. Fowler v. UPMC Shadyside, 578 F.3d 203,
210-11 (3d Cir. 2009) (setting forth post-Twombly standard of review).

request for medical assistance.  Defendant Wirth informed plaintiff that sick call slips were not accepted on weekends but that he could re-submit the sick call slip on Monday, January 26. Later that evening, plaintiff complained to an unidentified corrections officer about the pain he was suffering and again requested assistance.  The corrections officer told plaintiff that he did not have authority to accept a sick call slip.

Plaintiff submitted a sick call slip on the morning of January 26 but received no medical attention.  During the next three days, plaintiff complained to various corrections officers, including defendant William Radle, about his pain.  On each occasion, he was merely told to submit a sick call slip.  Finally, on the morning of Thursday, January 29, plaintiff was visited for the first time by a doctor, defendant Germaine.  The visit occurred outside plaintiff's cell and lasted approximately two minutes.  Defendant Germaine listened to plaintiff's description of his symptoms but did not conduct a physical examination.  Instead, she told plaintiff that she would return before breakfast to examine him further.  Defendant Germaine did not return until the morning of Friday, January 30, at which time she brought plaintiff to an examination room. Plaintiff alleges that after a brief examination defendant Germaine "acknowledged that his pleas for help were warranted and apologized for not returning to examine him the previous day."  Am. Compl. ¶ 31.

Plaintiff was admitted to the infirmary upon the recommendation of defendant Germaine. He alleges that while he was in the infirmary his pain was at its worst.  His scrotum and testicle were swollen to three times their normal size and the pain rendered him unable to walk.  After lunch on January 30, defendant nurse Mark Sokolski examined plaintiff and delivered to him antibiotics, which had been prescribed by defendant Arias.  As of that time, defendant Arias had

not personally examined plaintiff, so plaintiff informed defendant Sokolski that he did not wish to take medication without first being examined by a doctor. Plaintiff further informed defendant Sokolski that he had experienced similar symptoms in the past and knew that he needed to go to the hospital. Plaintiff alleges that "[d]efendant Sokolski did nothing to obtain further medical treatment for [plaintiff]." Am. Compl. ¶ 37.

On Sunday, February 1, plaintiff was examined at least three times. On each occasion, he was informed that the pain medication and antibiotics he had been taking were not working and that his condition had worsened. Defendant Arias diagnosed plaintiff as having an infection and informed plaintiff that he would prescribe stronger intravenous antibiotics. Later that evening, defendant Arias was again notified that plaintiff's condition had worsened and that the pain medication was ineffective. Defendant Arias ordered the infirmary to continue to monitor plaintiff's condition. At one point, out of frustration with his perceived lack of medical treatment, plaintiff "forcibly removed" the IV from his arm. Am. Compl. ¶ 43.

On Monday, February 2, defendant Arias informed plaintiff that he was being taken to the hospital. Defendant Arias admitted that "[he] did not know what was wrong with [plaintiff.]" Am. Compl. ¶ 44. Defendant Germaine referred plaintiff to obtain an ultrasound and marked that referral "urgent." Am. Compl. ¶ 45. The referral was approved by defendant Arias.

On Tuesday, February 3, plaintiff was admitted to Mercy Suburban Hospital in Norristown, Pennsylvania. In the emergency room, hospital staff performed a sonogram on plaintiff. The sonogram revealed that plaintiff was suffering from subacute stage testicular torsion of his left testicle. The same sonogram revealed evidence of chronic torsion of plaintiff's right testicle. Hospital personnel concluded that plaintiff should be admitted for in-patient

treatment and kept overnight for further observation and care. Prison officials, however, did not permit plaintiff to remain at the hospital overnight. Instead, he was rushed to a consultation with a urologist who "immediately knew" that plaintiff was suffering from testicular torsion. Am. Compl. ¶ 52. The urologist explained to plaintiff that if his condition had been diagnosed and treated within twelve hours of onset detorsion surgery could have prevented long-term damage to his testicle. These medical conclusions were documented in a letter from the urologist to defendant Arias.

Following his visit with the urologist, plaintiff was returned to SCI-Graterford and given over-the-counter pain medication to treat his symptoms. He continued to experience pain for one and one half to two months but never received follow-up treatment by the urologist. As a result of this ordeal, plaintiff lost his left testicle and is now sterile.

II.     Procedural History

As a result of defendants' alleged misconduct with respect to treating plaintiff's condition, on January 6, 2008, plaintiff filed a motion for leave to proceed in forma paurperis. On January 19, 2006, that motion was denied without prejudice. After several procedural issues were resolved, plaintiff's request for in forma pauperis status was granted on March 15, 2006. That same day, plaintiff filed a complaint against a variety of defendants. On April 17, 2006, plaintiff requested that the Court appoint counsel to represent him in this lawsuit. On May 2, 2006, six of the defendants filed an answer. The next day, four other defendants filed a motion to dismiss. On June 12, 2006, plaintiff again requested that this Court appoint him counsel or, alternatively, place his case in civil suspense. The Court placed his case in civil suspense on July

4

11, 2006.[2]

On September 13, 2006, the parties stipulated to the dismissal of several of plaintiff's claims unrelated to his allegedly deficient medical treatment. On December 18, 2006, plaintiff again requested that the Court either appoint counsel to represent him or continue the case in civil suspense. On January 12, 2007, the Court ordered that the case remain in civil suspense. On March 31, 2008, the Court granted plaintiff's motion for appointed counsel. It also ordered, however, that the case remain in civil suspense.[3] The case was finally removed from civil suspense on September 1, 2009. Later that month, the Court granted plaintiff's request for leave to file an amended complaint.

On October 19, 2009, with the assistance of Court-appointed counsel, plaintiff filed an amended complaint. The four-count[4] amended complaint alleged claims against DiGuglielmo, Prison Health Services, Germaine, Arias, Sokolski, Wirth and Radle. Defendant Wirth answered on October 28, 2009. Germaine, Arias and Prison Health Services filed a motion to dismiss on

---

[2] Plaintiff's request that the case be placed in civil suspense was apparently precipitated by his transfer from SCI-Graterford to SCI-Cresson. Before the transfer, he was receiving assistance from a fellow SCI-Graterford inmate who had legal training. Plaintiff himself could not read or write well and had no legal training. So without the assistance of his fellow inmate, he was unable to prepare and present his lawsuit. He requested a stay in order to attempt either to retain a lawyer or to find some other source of legal assistance.

[3] On July 27, 2009, the case was reassigned from the docket of one Judge to the docket of another Judge.

[4] The amended complaint contains the following counts: (I) denial of adequate medical attention in violation of 42 U.S.C. § 1983 (against PHS, Germaine, Arias, Sokolski, Wirth and Radle); (II) creation of a policy or custom sanctioning unconstitutional conduct in violation of 42 U.S.C. § 1983 (against DiGuglielmo and PHS); (III) violation of the Pennsylvania Constitution (against all defendants); and (IV) medical malpractice (against Germain, Arias, Sokolski and Wirth) .

November 10, 2009. On November 16, 2009, Radle filed his own motion to dismiss. On November 30, 2009, plaintiff responded to Radle's motion to dismiss. On December 3, 2009 Sokolski filed an answer. The next day, DiGuglielmo did the same. Finally, on December 10, 2009, plaintiff responded to the motion to dismiss filed by Germaine, Arias and Prison Health Services.[5]

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss all or part of an action for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Typically, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," though plaintiff's obligation to state the grounds of entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true (even if doubtful in fact)." Id. (citations omitted). The complaint must state "'enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." Wilkerson v. New Media Tech. Charter School Inc., 522 F.3d 315, 321 (3d Cir. 2008) (quoting Twombly, 550 U.S. at 556). The Court of Appeals has recently made clear that after Ashcroft v. Iqbal, --- U.S. ---, 129 S. Ct. 1937, 1955, 173 L. Ed. 2d 868 (2009), "conclusory or 'bare-bones' allegations will no longer survive a motion to dismiss: 'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.' To prevent dismissal, all civil complaints must

---

[5]        This case was reassigned to my docket on April 12, 2010.

now set out 'sufficient factual matter' to show that the claim is facially plausible." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Iqbal, 129 S. Ct. at 1949). The Court also set forth a two part-analysis for reviewing motions to dismiss in light of Twombly and Iqbal: "First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" Id. at 210-11 (quoting Iqbal, 129 S. Ct. at 1950). The Court explained, "a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." Id. (citing Phillips v. County of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008)). "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.'" Iqbal, 129 S. Ct. at 1949.

DISCUSSION

Defendants Germaine, Arias, PHS and Radle offer a variety of reasons why the claims against them should be dismissed. Plaintiff addresses each of the arguments offered by defendants and asks that I deny the motions to dismiss in their entirety. I will discuss each argument in turn.

I.    Plaintiff Has Alleged Sufficient Facts To State a Section 1983 Claim Against PHS

    A.    Legal Standard

    Section 1983 provides a civil right of action for violations by state actors of rights

guaranteed by the United States Constitution or federal statutory law.[6]  To state a valid claim under section 1983, "[a plaintiff] must demonstrate a violation of a right secured by the Constitution and the laws of the United States [and] that the alleged deprivation was committed by a person acting under color of state law."[7]  Mark v. Borough of Hatboro, 51 F.3d 1137, 1141 (3d Cir. 1995) (quoting Moore v. Tartler, 986 F.2d 682, 685 (3d Cir. 1993)).

In this case, plaintiff alleges violations of the Eighth Amendment's prohibition of cruel and unusual punishment.  The Supreme Court has held that the Eighth Amendment does not require states to ensure that prisons are free of discomfort.  See Hudson v. McMillian, 503 U.S. 1, 9 (1992).  They must, however, provide "the minimal civilized measure of life's necessities, such as food, clothing, shelter, sanitation, medical care, or personal safety."  Farmer v. Brennan, 511 U.S. 825, 832 (1994).  With respect to the provision of medical care, the Eighth Amendment is violated where the defendant acts with "deliberate indifference" to the plaintiff's "serious medical needs."  See Estelle v. Gamble, 429 U.S. 97, 104 (1976).  A medical need is serious "if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention."  See Monmouth County Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotations omitted).  Here, there is no disagreement that plaintiff's condition was serious.

---

[6]     Section 1983 provides: "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

[7]     Defendants do not dispute that they are state actors.

A prison official acts with deliberate indifference when he or she "knows of and disregards an excessive risk to inmate health or safety." See Natale v. Camden County Corr. Facility, 318 F.3d 575, 582 (3d Cir. 2003) (quoting Farmer, 511 U.S. at 837). In order to be liable, the defendant must be "both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw that inference." See id. Under this standard, "claims of negligence or medical malpractice, without some more culpable state of mind, do not constitute 'deliberate indifference.'" See Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999). On the other hand, "deliberate indifference may be manifested by an intentional refusal to provide care, the delay of medical treatment for non-medical reasons, a denial of prescribed medical treatment, or a denial of reasonable requests for treatment that results in suffering or risk of injury." See Perkins v. Scwappach, No. 07-2124, 2010 WL 1558697, at *6 (E.D. Pa. Apr. 16, 2010) (citing Rouse, 182 F.3d at 197). To establish the section 1983 liability of a private corporation like PHS, plaintiff must show that the corporation established and maintained a policy, practice or custom which directly caused plaintiff's constitutional injury and did so with deliberate indifference to the consequences. See Winslow v. Prison Health Servs., No. 08-0785, 2010 WL 571766, at *5-*6 (E.D. Pa. Feb. 12, 2010) (citing Stoneking v. Bradford Area School Dist., 882 F.2d 720, 725 (3d Cir. 1989)). Private corporations cannot be held liable for the acts of their employees under theories of respondeat superior or vicarious liability. See Natale, 318 F.3d at 583-84.

B.      Section 1983 Claims Against PHS

Defendant PHS argues that plaintiff has not sufficiently alleged that PHS, with deliberate indifference, established and maintained a policy, practice or custom injurious to plaintiff's

constitutional rights. Plaintiff makes two arguments in response. First he argues that the amended complaint sufficiently alleges that PHS maintained a policy, practice or custom that resulted in the deprivation of plaintiff's Eighth Amendment rights. Second, he argues the amended complaint sufficiently alleges that, with deliberate indifference, PHS failed to supervise or train its employees adequately. I will discuss each argument in turn.

1. The Amended Complaint Adequately Alleges that PHS Maintained a Policy, Practice or Custom that Resulted in the Deprivation of Plaintiff's Eighth Amendment Rights

Plaintiff first argues that the amended complaint alleges that PHS maintained a policy or procedure that violated his Eighth Amendment rights. In support, he points to paragraph 75 of the amended complaint, which states "[t]he inadequate and blatantly inappropriate care given by [PHS's] employees demonstrates that [PHS's] policies, procedures and protocols, that it has put in place over the last thirty (30) years, encourage its employees to deliberately ignore the serious medical needs of the prisoners it is contracted to care for." Am. Compl. ¶ 75. This conclusory allegation is, by itself, insufficient to state a claim for relief because it does not identify a policy, practice or custom that caused plaintiff's constitutional injury. Specific details of the allegedly injurious policies are not necessary at this stage, but more is required than the bald statement that an injurious policy exists. The allegations presently contained in the amended complaint are insufficient even to place PHS on notice of which of its policies plaintiff alleges to be violative of the Eighth Amendment.

Plaintiff cites Gioffre v. County of Bucks, No. 08-4232, 2009 WL 3617742, at *4 (E.D. Pa. Nov. 2, 2009), for the proposition that he is not required to identify a specific practice or policy. Review of that case, however, reveals that the plaintiff did identify a specific practice.

Namely, that the defendant denied the plaintiff medical care for cost-saving reasons. See Gioffre, 2009 WL 3617742, at *4. The Court held that such allegations "elevate[d] the Complaint, perhaps only barely, from being merely a blanket, general assertion of entitlement to relief." See id. As plaintiff correctly notes, fact-pleading is not required. What is required, however, is a complaint that alleges "enough facts to raise a reasonable expectation that discovery will reveal evidence of" the necessary element." See Wilkerson, 522 F.3d at 321. The allegation contained in paragraph 75 is insufficient to meet this standard.

Perhaps recognizing this deficiency, plaintiff next attempts to avail himself of allegations contained in another plaintiff's complaint. In Carter v. Smith, No. 08-279, 2009 WL 3088428, at *1 (E.D. Pa. Sept. 22, 2009), I held that the plaintiff's complaint was sufficient to state a claim of an Eighth Amendment violation. In Carter, unlike here, the complaint contained allegations that the defendants denied the plaintiff treatment that they knew to be necessary solely in order to reduce their own costs. See Carter, 2009 WL 3088428, at *4-5. Because the present complaint contains no similar allegations, plaintiff characterizes my opinion in Carter as a "finding" that PHS "had a financially motived policy toward providing treatment to prisoners whose care was entrusted to PHS." Pl.'s Br. at 9. Plaintiff's argument is mistaken. The factual background in Carter did not reflect any factual findings by me. Instead, as clearly noted in a footnote at the head of the background section, "I accept[ed] as true all well-pleaded facts in plaintiff's complaint together with reasonable inferences that may be drawn therefrom." See Carter, 2009 WL 3088428, at *1 n.3. Plaintiff may not rely on the factual allegations in another lawsuit to support his claim against PHS. If he knows of facts that would support his claim that PHS created with deliberate indifference a policy or practice that violated his constitutional rights, he

should allege such facts in his own complaint.

Although plaintiff's arguments have thus far been unavailing, my review of the complaint reveals allegations that are sufficient to survive a motion to dismiss. In paragraph 83 of the amended complaint, plaintiff alleges "[t]he onset of [plaintiff's] testicular torsion occurred over a weekend; however, prison employees informed him that they were not allowed to accept his "sick call slip" and he would not be receiving medical treatment until at least Monday." Then, in the next paragraph, plaintiff alleges that "[he] was told by Defendants Wirth and Radle, along with other Corrections Officers, that it was the prison's policy [not to] accept 'sick call slips' over the weekend and that he would have to wait until Monday to re-submit the slip." Am. Compl. ¶ 84. A policy that indiscriminately and unjustifiably refuses medical care for up to forty-eight hours could constitute deliberate indifference.

PHS argues, however, that the amended complaint contains no allegations that this policy was designed or implemented by PHS. At this stage, I must draw all reasonable inferences in favor of plaintiff. The "prison employees" plaintiff refers to in paragraphs 83 and 84 could reasonably refer to PHS employees. Accordingly, I will deny the motion to dismiss count II with respect to PHS. A reasonable jury could find that PHS implemented a policy that indiscriminately restricted access to medical care for up to forty-eight hours at a time, and that such policy constituted deliberate indifference on the part of PHS. Moreover, I will grant plaintiff's request for leave to amend his complaint. If plaintiff intends to offer another theory of deliberate indifference by PHS, his second amended complaint should include the necessary well-pleaded allegations.

2.     The Amended Complaint Adequately Alleges that PHS Failed To
Supervise or Train its Employees with Deliberate Indifference to
Plaintiff's Constitutional Rights

Plaintiff also argues that PHS maintained a policy, practice or custom of failing to

supervise or train its employees in a manner that exhibited deliberate indifference.  Defendant

disagrees.

As discussed above, an employer cannot be held vicariously liable for the misconduct of

its employee under section 1983.  See Carter v. City of Philadelphia, 181 F.3d 339, 357 (3d Cir.

1999).  A plaintiff can, however, state a claim under section 1983 by showing that the

constitutional violation was caused by the employer's failure to train the employee.  See City of

Canton v. Harris, 489 U.S. 378, 389 (1989).  First, the plaintiff must allege that the training

offered to an employee was, in a relevant way, inadequate.  See Brickell v. Clinton County Prison

Bd., 658 F. Supp. 2d 621, 627 (M.D. Pa. 2009).  Then, the plaintiff must allege that the

inadequate training stemmed from deliberate indifference on the part of the employer to

prisoners' constitutional rights.  See id. (citing Harris, 489 U.S. at 388) ("[A] failure to train

claim may serve as the basis for § 1983 liability only where the failure to train amounts to

deliberate indifference to individuals' constitutional rights.").  In order to make a sufficient

showing of deliberate indifference, the plaintiff must allege that: (1) municipal policymakers

know that employees will confront a particular situation; (2) the situation involves a difficult

choice or a history of employees mishandling; and (3) the wrong choice by an employee will

frequently cause deprivation of constitutional rights.  See Carter v. City of Philadelphia, 181 F.3d

339, 357 (3d Cir. 1999).

At this stage, plaintiff has met his burden of alleging that PHS employees were

inadequately trained and that such inadequate training stemmed from PHS's deliberate indifference to plaintiff's constitutional rights. In support of his allegation that PHS employees were inadequately trained, plaintiff alleges that "[e]ven though [plaintiff] was afforded some medical treatment, the treatment he did receive was so patently late, never calculated to address an emergency situation, plainly inadequate and inappropriate as to evidence intentional mistreatment which seriously aggravated his condition." Am. Compl. ¶ 77. A specific recitation of the allegedly inadequate treatment was also included in the complaint. See id. at ¶¶ 16-59. A reasonable jury could conclude, based on plaintiff's allegations, that PHS's employees were inadequately trained on how to respond to a medical emergency. The details of plaintiff's claim, such as the nature and extent of training provided to PHS's employees, should emerge during discovery.

Plaintiff has also satisfied the Carter test for alleging deliberate indifference. First, medical emergencies occur regularly enough in a prison environment that PHS should anticipate that its employees will encounter them. Indeed, he has alleged in paragraph 72 that the Pennsylvania Department of Corrections Policies includes a section regarding recognizing and responding to medical emergencies. Second, the situation at issue involves a difficult choice–whether and in what fashion to treat an inmate complaining of medical pain. Third, a wrong decision by a PHS employee in handling a medical emergency undoubtedly could cause a deprivation of constitutional rights.

Because plaintiff has adequately alleged that PHS failed to supervise or train its employees in deliberate indifference of plaintiff's constitutional rights, I will deny PHS's motion to dismiss this claim.

14

II.     Plaintiff Has Adequately Alleged Deliberate Indifference by both Germaine and Arias

        Defendants Germaine and Arias argue that the amended complaint against them must be

dismissed because plaintiff has not sufficiently alleged that they were deliberately indifferent to

plaintiff's serious medical needs.  Plaintiff responds that the amended complaint contains "direct

factual allegations that [Germaine and Arias] acted with the requisite knowledge of substantial

risk."  Pl.'s Br. at 14.

        As discussed above, in order to state an Eighth Amendment claim under section 1983

plaintiff must allege that defendants were deliberately indifferent to plaintiff's serious medical

needs.  Deliberate indifference occurs: (1) where prison authorities deny reasonable requests for

medical treatment and such denial exposes the inmate to undue suffering or the threat of tangible

residual injury; (2) where knowledge of the need for medical care is accompanied by an

intentional refusal to provide that care or if necessary medical treatment is delayed for

non-medical reasons; (3) where prison officials enact arbitrary or burdensome procedures to

create interminable delays or denial of medical care to suffering inmates; (4) where prison

officials condition provision of needed medical services on an inmate's ability or willingness to

pay; or (5) where prison authorities prevent an inmate from receiving recommended treatment for

serious medical needs or deny access to a physician capable of evaluating the need for such

treatment.  See Carter, 2009 WL 3088428, at *4 (citing Monmouth County Corr. Inst. Inmates v.

Lanzaro, 834 F.2d 326, 346-47 (3d Cir. 1987)).  In any event, deliberate indifference requires

personal involvement in the wrongdoing by the defendant.  See Rode v. Dellarciprete, 845 F.2d

1195, 1207 (3d Cir. 1988).

        On the other hand, "mere allegations of medical malpractice are not actionable under

section 1983." <u>Lanzaro</u>, 834 F.2d at 346. Neither, of course, will mere disagreement as to the propriety of the prescribed medical treatment support a claim of an Eighth Amendment violation. <u>See</u> <u>id.</u>

        A.      The Amended Complaint Contains Sufficient Allegations of Deliberate Indifference by Germaine

Germaine argues that the allegations in the amended complaint consist of mere disagreement with the type and quality of treatment that Germaine provided. In support of this argument, Germaine notes that there is no allegation that she ever received plaintiff's sick call slips or refused to accept such slips. Even assuming Germaine's argument with respect to the sick call slips is correct, I find that there are sufficient well-pleaded allegations to allow a reasonable jury to conclude that she was deliberately indifferent. For instance, paragraphs 26 through 31 detail a face-to-face encounter between Germaine and plaintiff. There, plaintiff allegedly explained his painful symptoms to Germaine and, after noting plaintiff's complaints, Germaine promised that she would return shortly to examine plaintiff further. She did not return for the next twenty-four hours. As noted in <u>Carter</u>, "[w]here knowledge of the need for medical care is accompanied by an intentional refusal to provide that care or if necessary medical treatment is delayed for non-medical reasons" a reasonable jury could conclude that the defendant exhibited deliberate indifference. <u>See</u> <u>Carter</u>, 2009 WL 3088428, at *4. Plaintiff has sufficiently alleged that Germaine's decisions not to treat plaintiff immediately and not to return in a timely fashion to examine him further were motivated by deliberate indifference. A reasonable jury could conclude that Germaine's decision not to return to examine plaintiff, despite knowing that he was in excruciating pain, constituted cruel and unusual punishment.

Germaine's motion to dismiss this claim will thus be denied.

B.     The Amended Complaint Contains Sufficient Allegations of Deliberate
       Indifference by Arias

Defendant Arias makes the same argument with respect to the claims against him.  He
argues that the allegations in the complaint establish, at most, that the care he provided to
plaintiff was professionally unreasonable–i.e., that he was negligent.  Plaintiff responds with two
arguments.  First, he argues that Arias "is responsible for acquiescing in a medical services
delivery system that permits serious medical needs to be ignored during weekend hours,
regardless of the merit or emergency nature of those needs."  Def.'s Br. at 16.  He also argues
that Arias's decision not to send plaintiff to the emergency room constituted deliberate
indifference.

With respect to plaintiff's argument that Arias's acquiescence in an unconstitutional
policy constituted actionable cruel and unusual punishment, I disagree.  Plaintiff does not argue
that Arias "acquiesced" in the unconstitutional policy in any constitutionally meaningful way.
He appears to argue merely that Arias didn't intercede to change an unconstitutional
policy–"[t]hese physicians [referring to Germaine and Arias] cannot simply stand idly by in the
face of policies that prevent inmates from receiving treatment solely on the basis of their needs
arising during weekend and then claim, as they do in the current motion to dismiss, that they are
not responsible for delayed treatment."  Pl.'s Br. at 16.  This argument ignores the deliberate
indifference requirement.  Absent a showing that Arias either implemented the unconstitutional
policy with deliberate indifference to plaintiff's constitutional rights or acted in deliberate
indifference of plaintiff's serious medical need as a result of (or in reliance on) the

unconstitutional policy, he cannot be held liable under this theory. See Rode v. Dellarciprete, 845 F.2d 1195, 1207-08 (3d Cir. 1988) ("A defendant in a civil rights action must have personal involvement in the alleged wrongs . . . ."). Otherwise, the fact that PHS maintained an unconstitutional policy alone would be enough to hold liable every medical professional employed by PHS. The Supreme Court's interpretation of section 1983 does not permit such a result. See Estelle, 429 U.S. at 106 (requiring plaintiff to establish that a section 1983 defendant exhibited "deliberate indifference to an inmate's serious medical needs").

I agree, however, with plaintiff's second argument that the course of treatment prescribed by Arias could have constituted deliberate indifference. There are a variety of actions by Arias with which plaintiff takes issue. First, he describes as "knee-jerk" Arias's decision to prescribe antibiotics without examining plaintiff or administering tests to confirm the diagnosis that plaintiff suffered from an infection. Second, he argues that it was "medically obvious" that plaintiff needed to go to the hospital for an ultrasound, a need which Arias did not address. Third, he posits that Arias's "insistence in pumping [plaintiff] full with antibiotics for an 'infection' prevented [plaintiff] from receiving the recommended treatment for his testicular torsion." Pl.'s Br. at 17.

Unlike plaintiff's allegations with respect to Germaine, who allegedly knew of plaintiff's condition yet did not provide timely treatment, it is clear from the amended complaint that Arias provided at least some treatment for plaintiff's condition. He prescribed antibiotics and assigned infirmary staff to observe and care for plaintiff for four days. He even prescribed a stronger antibiotic when it became clear that the first prescription was not effective. Unfortunately, Arias's diagnosis later proved to be incorrect and the prescribed course of treatment was

consequently ineffective. The critical question in determining whether such allegations are sufficient to state a section 1982 claim is one of intent–whether Arias's mistreatment was motivated by deliberate indifference. See Durmer v. O'Carroll, 991 F.2d 64, 68-69 (3d Cir. 1993). "[I]f the inadequate care was a result of an error in medical judgment on [defendant's] part, [plaintiff's] claim must fail; but, if the failure to provide adequate care . . . was deliberate, and motivated by non-medical factors, then [plaintiff] has a viable claim." Id. at 69. Because the amended complaint alleges that Arias's failure to provide adequate care was motivated by deliberate indifference, see, e.g., Am. Compl. ¶¶ 40, this claim will survive Arias's motion to dismiss.

III.     The Amended Complaint Sufficiently Alleges Causation

In addition to alleging that defendants were deliberately indifferent to his serious medical needs, plaintiff must also allege that such deliberate indifference proximately caused his injury. See Hamilton v. Leavy, 117 F.3d 742, 746 (3d Cir. 1997). Defendants Germaine and Arias argue that the allegations in the amended complaint establish as a matter of law that proximate causation did not exist in this case. The amended complaint alleges that if detorsion surgery had been performed within twelve hours of the onset of symptoms then testicular damage could have been prevented. Am. Compl. ¶ 53. The amended complaint also alleges that plaintiff began experiencing symptoms at 3:00 P.M. on January 25, 2004 and complained to defendant Wirth at 6:00 P.M. the same day. See id. at ¶¶ 16-18. According to the complaint, however, Germaine was not informed of plaintiff's condition until the morning of January 29 and Arias had no knowledge of plaintiff's condition until he reported to the infirmary on January 30. See id. ¶¶ 23-26, 32-38. Therefore, according to both defendants, even if their conduct amounted to an

actionable constitutional violation plaintiff would be unable to establish causation because by the time the misconduct occurred plaintiff had already suffered irreversible injury.

I disagree. Even if it is true that by the time Germaine and Arias became aware of plaintiff's condition they could not have prevented the testicular torsion, they still could have minimized his pain and suffering by providing timely and effective treatment. Instead, Germaine waited approximately twenty-four hours to examine plaintiff and Arias provided a variety of ineffective treatments.[8] I will thus deny Germaine's and Arias's motion to dismiss for failure to allege causation.[9]

## IV.    The Amended Complaint Adequately Alleges Medical Malpractice

### A.    Medical Malpractice Sounding in Tort

Defendants Germaine and Arias next argue that plaintiff has failed to state a claim for medical malpractice. In order to state a malpractice claim the plaintiff must allege: (1) a duty owed by the physician to the patient; (2) a breach of that duty by the physician; (3) that the breach was the proximate cause of the harm suffered; and (4) the damages suffered were a direct result of the harm. See Stimmler v. Chestnut Hill Hosp., 981 A.2d 145, 154-55 (Pa. 2009) (citing Quinby v. Plumsteadville Family Practice, 907 A.2d 1061, 1070-71 (Pa. 2006)). A

---

[8]    As discussed supra, Arias's failure to provide effective treatment, by itself, is not enough to state a section 1983 claim. Plaintiff must also show that such failure was motivated by deliberate indifference.

[9]    I note that plaintiff may not be able to show that Germaine and Arias caused his infertility. In order to do so, he must show that they had actual knowledge of his condition within the time period during which infertility prevention was possible and that they were deliberately indifferent to his medical needs. I need not address that question at this time because the amended complaint clearly alleges that plaintiff suffered at least some actionable harm. I anticipate that discovery is likely to shed some light on this issue.

medical professional "is required to possess and employ in the treatment of a patient the skill and knowledge usually possessed by physicians in the same or a similar locality, giving due regard to the advanced state of the profession at the time of the treatment; and in employing the required skill and knowledge he is also required to exercise the care and judgment of a reasonable man." Winschel v. Jain, 925 A.2d 782, 797 (Pa. Super. Ct. 2007) (quoting Joyce v. Boulevard Physical Therapy & Rehab. Ctr., P.C., 694 A.2d 648, 654 (Pa. Super. Ct. 1997)). Whether or not a medical professional breached that duty is, of course, a question of fact to be decided by the jury. See Pakett v. The Phillies, L.P., 871 A.2d 304, 308 n.8 (Pa. Cmmwlth. Ct. 2005).

Germaine and Arias argue that the allegations contained in the amended complaint are insufficient as a matter of law to establish that they breached their respective duties of care. In support of this argument, Germaine states that her delay in sending plaintiff to the infirmary cannot constitute breach. She cites no case law in support of her position. Arias presents a similar argument. He states, without citation, that plaintiff's allegations that Arias should not have prescribed antibiotics and instead should have sent him immediately to the hospital cannot constitute breach. I find that plaintiff's amended complaint sufficiently alleges breach. A reasonable jury could conclude that Germaine's delay in providing treatment and Arias's misdiagnosis and consequent mistreatment breached their respective duties of care.

Ocasio v. Prison Health Servs., Inc., 979 A.2d 352, 355 (Pa. Super. Ct. 2009), upon which Germaine and Arias rely in support of their position, does not compel a different conclusion. There, the trial court found the plaintiff's complaint to be frivolous. See Ocasio, 979 A.2d at 355-56. The Superior Court affirmed, finding that the plaintiff's two-sentence allegation of duty, breach, causation and harm was insufficient to state a claim for medical

21

malpractice.  See id.  The present amended complaint is far from frivolous.  It contains ninety-eight paragraphs of relatively detailed factual allegations.  More importantly, it contains facts from which a reasonable jury could conclude that Germaine and Arias breached the duties of care they owed to plaintiff, and such breach proximately caused his injury.  No more is required at this stage.  I will deny the motion to dismiss this claim.

        B.      Medical Malpractice Sounding in Contract

Germaine and Arias also move to dismiss plaintiff's medical malpractice claim to the extent that it is based on breach of an implied contract between them and plaintiff.  Plaintiff appears not to contest this aspect of the motion to dismiss.  Pl.'s Br. at 24 ("[plaintiff] intends to proceed with count IV of the Amended Complaint for medical malpractice based on negligence.").  In any event, Pennsylvania Courts have held that "where the complaint in an action to recover from a hospital and doctors for performance of an unnecessary operation contains counts in both tort and assumpsit, the court will dismiss the assumpsit counts as redundant since the action basically sounds in tort."  Murphy v. Aesthetic & Reconstructive Surgery, No. 156-1988, 1989 WL 206362, at *276-77 (Pa. Com. Pl. Apr. 18, 1989); see also Saqulla v. Scullin, 26 Pa. D & C. 3d 148, 150 (Pa. Com. Pl. 1982) (dismissing the plaintiff's medical malpractice claims sounding in contract as redundant because plaintiff had also advanced a malpractice claim sounding in negligence).  Accordingly, I will grant defendants' motion to dismiss the medical malpractice claim insofar as it rests upon a breach of an implied contract theory.


V.      Plaintiff's Attorney's Fees Claim Will Be Dismissed

Defendants PHS, Germaine and Arias move to strike plaintiff's demand of attorney's fees in counts III and IV of the amended complaint. "Generally, litigants are responsible for their own counsel fees unless otherwise permitted by statutory authority, agreement of the parties, or some other recognized exception to the general rule." Hart v. Arnold, 884 A.2d 316, 342 (Pa. Super. Ct. 2005). Plaintiff recognizes this principle but argues that the demand for attorney's fees should not be dismissed because at some point during the litigation defendants may exhibit "obdurate" conduct, which warrants an award of attorney's fees. See Simmons v. City of Philadelphia, 471 A.2d 909, 910-11 (Pa. Cmwlth. Ct. 1984) (citing 42 Pa. Cons. Stat. Ann. § 2503 (setting forth a list of circumstances under which a party may be awarded attorney's fees)).

I disagree. No Pennsylvania statute allows for an award of attorney's fees for the claims alleged in counts III and IV. A demand of attorney's fees in anticipation of some inappropriate conduct that might occur during the course of litigation is premature. If defendants conduct themselves in a manner that warrants an award of attorney's fees, plaintiff may renew his demand at that time. For now, however, plaintiff's demands for attorney's fees in counts III and IV are dismissed.

VI.     The Amended Complaint Violates the Statute of Limitations as to Defendant Radle

Defendant Radle argues that the amended complaint against him violates the statute of limitations. In Pennsylvania, the statute of limitations for a civil rights violation is two years. See Garvin v. City of Philadelphia, 354 F.3d 215, 220 (3d Cir. 2003). The amended complaint alleges that Radle's deliberate indifference occurred no later than February 3, 2004. The statute of limitations therefore expired on February 3, 2006. No defendant disputes that plaintiff's original complaint was timely filed. His amended complaint, however, was not filed until

October 19, 2009. Therefore, in order to satisfy the statute of limitations, plaintiff must avail himself of Rule 15(c) of the Federal Rules of Civil Procedure which allows, under certain circumstances, an amendment to a pleading to relate back to the date of the original pleading.

The dispositive issue for Radle's motion to dismiss, then, is whether Rule 15(c) allows the claims against Radle in the amended complaint to relate back to the date the original complaint was filed. Rule 15(c) allows an amendment to relate back to the date of the original complaint when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out–or attempted to be set out–in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). The purpose of Rule 15(c) is "to ameliorate the effect of the statute of limitations in instances where the opposing party has notice of the suit, but the amending party had failed to assert all possible claims or defenses arising out of the conduct, transaction or occurrences set forth in the original pleading." See Doe v. O'Bannon, 91 F.R.D. 442, 447 (E.D Pa. 1981). This Court has held that "[i]f the amendment adds new legal theories of recovery based on the exact same facts as the original pleading, then the amendment clearly relates back." Farber v. Gen Elec. Co, 93-2349, 1994 WL 46519, at *3 (E.D. Pa. Feb. 16, 1994) (citing Donnelly v. Yellow Freight Sys., Inc., 874 F.2d 402, 410 (7th Cir. 1989)). "The factual elements need not be exactly the same, but the likelihood of relation back decreases as the substance of the amended claims become increasingly distant from the claims of the original complaint." Id. "In essence, application of Rule 15(c) involves a search for a common core of operative facts in the two pleadings." Bensel v. Allied Pilots Ass'n, 387 F.3d 298, 310 (3d Cir. 2004). In deciding whether a particular amendment relates back to the original complaint, "the court looks to whether the opposing party has had fair notice of the general fact situation and legal theory upon

which the amending party proceeds." Id.

The crux of Radle's argument is that plaintiff knew Radle's identity when he filed his original complaint but sued Radle only for retaliatory transfer. Then, in his amended complaint, filed more than three years after his original complaint, plaintiff included for the first time allegations that Radle was involved in plaintiff's medical mistreatment. Radle argues that under these circumstances, the new allegations contained in the amended complaint do not relate back to the original complaint and therefore such allegations are time-barred. Plaintiff, for his part, argues that the amended complaint arises out of the same facts as contained in the original complaint and that he has simply adduced a new legal theory arising from such facts.

I agree with Radle. Even though Radle was named as a defendant in the original complaint, the allegations contained therein were insufficient to place Radle on notice that he may later need to defend against allegations of deliberate indifference. Specifically, the amended complaint alleges that during the three days between plaintiff's Monday morning submission of a sick call slip and Germaine's visit to his cell on Thursday morning, plaintiff complained to Radle "that [plaintiff] was in severe pain and needed to see a doctor and/or go to the hospital" but Radle did nothing to assist him. Am. Compl. ¶¶ 24-25.

There are no remotely similar allegations in plaintiff's original complaint. There, the only claim asserted against Radle was that he initiated an unconstitutional transfer of plaintiff from one prison to another in retaliation for pursuing a lawsuit. With respect to his Eighth Amendment claims, plaintiff alleged that he complained of his symptoms to defendant Wirth and corrections officer Toluba on the morning of Monday, January 26, 2004. Compl. ¶ 29. In the next paragraph, he alleged that defendant Germaine visited him three days later to gather

additional information.  Compl. ¶ 30.  The original complaint contained no allegation that

plaintiff complained to anyone–much less that he complained to Radle–during the intervening

three days.  The "common core of operative facts" between the original complaint and the

amended complaint does not include allegations of deliberate indifference against Radle.  Thus,

even the most expansive reading of the allegations in the original complaint simply does not

suffice to put Radle on notice that he might later be forced to defend against allegations of

deliberate indifference.  See Walker v. Glover, No. 06-5211, 2008 WL 4606312, at *5 (D.N.J.

Oct. 16, 2008) (encouraging an "expansive" reading of a pro se plaintiff's original complaint).

Contrary to plaintiff's argument, the new allegations pertaining to Radle in the amended

complaint are not merely the same factual allegations couched in a new legal framework.  If that

were the case, relation back to the original complaint would clearly be appropriate.  See Farber,

1994 WL 46519, at *3.  The addition of a new legal theory, however, ordinarily is permitted

where a plaintiff realizes after filing his complaint that the facts alleged give rise to an additional

claim.  In Donnelly, for example, the plaintiff realized that the facts contained in the original

complaint supported not only his original Illinois Human Rights Act claim but also a Title VII

claim.  See Donnelly, 874 F.2d at 410.  Unlike in Donnelly, plaintiff here has alleged not only a

new legal theory against Radle–deliberate indifference–but in an attempt to support that claim he

has also included new factual allegations.  Namely, that plaintiff informed Radle of his pain and

asked for assistance but never received it.  Where, in an amended complaint, a plaintiff brings a

new claim based on factual allegations not included in the original complaint, the amendment

will not relate back to the original complaint.[10]  See, e.g., Burgos v. Philadelphia Prison Health Sys., No. 08-1179, 2009 WL 2710240, at *2 n.5 (E.D. Pa. Aug. 26, 2009) (finding that an amendment does not relate back where, in his original complaint, the plaintiff alleged that prison officials were deliberately indifferent to his constitutional rights and, in his amended complaint, alleged that hospital personnel acted in deliberate indifference).

I admit some reservation over the fact that plaintiff's claim against Radle will be dismissed because his original complaint, which was filed pro se, contained no allegations of deliberate indifference by Radle.  To hold otherwise, however, would be to derogate the purpose and the effect of the statute of limitations.  This is not a situation where, as in construing a pro se plaintiff's complaint, I have the discretion to apply a less stringent standard.  "Statutes of limitations are not 'simply technicalities,' but rather are 'fundamental to a well-ordered judicial system.'"  See Proper v. Crawford County Corr. Facility, No. 06-279, 2009 WL 5216860, at *5 (W.D. Pa. 2009) (quoting Bd. of Regents v. Tomanio, 446 U.S. 478, 487 (1980)).  Because plaintiff's original complaint cannot fairly be read to put defendant on notice of a potential claim of deliberate indifference against him, such claim cannot be added by amendment three years later without violating the statute of limitations.

CONCLUSION

For the reasons set forth more fully above, Radle's motion to dismiss will be granted and the remaining defedants' motions will be granted in part and denied in part.  Further, I will

---

[10]     I have found that plaintiff has not satisfied subsection (c)(1)(B) of Rule 15. Accordingly, subsection (c)(1)(C), which requires inter alia that subsection (c)(1)(B) be satisfied, is inapplicable.  I therefore need not decide the dispute between plaintiff and defendant over which subsection applies.

reserve judgment on whether Pennsylvania law provides for monetary damages for violations of the Pennsylvania Constitution. I will order additional briefing on that issue.

An appropriate Order follows.