IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EDWARD KAMEL ABRAHAM, JR. | : | CIVIL ACTION |
| | : | NO. 06-0058 |
| v. | : | |
| | : | |
| DAVID DIGUGLIELMO, et al. | : | |

O'NEILL, J.                                                                           JUNE 30, 2011

## MEMORANDUM

Plaintiff filed a four count complaint alleging that his medical needs were mistreated while he was incarcerated at the Pennsylvania State Correctional Institution at Graterford. Defendants Jude Germaine, Felipe Arias and Prison Health Services[1] filed a motion for summary judgment. Presently before me are defendants' brief in support of its motion, plaintiff's response and defendants' reply.

## BACKGROUND

During the time period relevant to this case, plaintiff was incarcerated at SCI-Graterford. Am. Compl. ¶ 11. While incarcerated, Plaintiff developed subacute stage testicular torsion in his left testicle. Despite his requests for medical attention, Plaintiff did not receive treatment until February 3, 2004 -- 10 days after he first experienced pain. Id. at 46. Doctors at the hospital informed plaintiff that had his condition been properly treated within twelve hours damage to his testicle could have been prevented. Id. at 53.

On February 10, 2004, plaintiff filed an initial grievance, number 75442, with Facility Grievance Coordinator Leslie Hatcher. He complained therein of pain in his testicles and expressed frustration that he was receiving inadequate pain medication. See Grievance No. 754422 from plaintiff to Leslie Hatcher (Feb. 10, 2004) (Pl.'s Ex. A). Hatcher received

---

[1] Plaintiff also named David DiGuglielmo, Mark Sokolski and Sally Wirth as defendants in his amended complaint.

Grievance number 75442 on February 13, 2004 and directed it to Grievance Officer Julie Knauer. Id.; see Department of Corrections Policy Statement DC-ADM 804, Inmate Grievance System at part (VI)(B)(1)(e) (Feb. 25, 2002) (Pl.'s Ex. D). Knauer responded to plaintiff's grievance on February 26, 2004. She informed him that because more than twelve hours had passed before he had reported the pain in his left testicle to the medical department "nothing can be done clinically except to manage pain symptomatically." See Official Inmate Grievance Initial Review Response from Julie Knauer to plaintiff (Feb. 26, 2011) (Pl.'s Ex. A). She also explained that plaintiff had been examined by two doctors who felt that Motrin was sufficient to alleviate his pain. Id.

Frustrated with Knauer's findings and still in pain, plaintiff filed an Inmate's Request To Staff Member form that he addressed to "Grievance Officer." See Inmate's Request To Staff Member from plaintiff to Grievance Officer (Mar. 2, 2004) (Pl.'s Ex. B). Plaintiff's inmate request form provided a more detailed account of his alleged medical mistreatment. First, plaintiff disputed Knauer's finding that he had waited over twelve hours before reporting his pain to the medical department. Id. He explained that he had been unable to request medical attention on a weekend because "the nures (sic) told me that she does not do sick calls on the weekend, so I had to give it to a nures (sic) on Monday." Id. Next, plaintiff complained that Defendant Arias, a doctor assigned to provide medical care to prisoners confined at SCI-Graterford, had misdiagnosed his condition as an infection and treated him with antibiotics for three days before sending him to a hospital. Id. Finally, plaintiff asserted that "if your so called 'Doctors' (sic) would have did (sic) thire (sic) job's (sic) to begane (sic) with, I would not be in the pain I'm in now!" Id.

Wendy Shaylor received plaintiff's inmate request form on March 3, 2004. Id. As grievance coordinator, Shaylor reviewed all grievances filed by inmates and assigned them to the appropriate grievance officers. (Shaylor Aff. ¶ 2). She was also responsible for reviewing

appeals of grievance responses and directing them to the Superintendent of SCI-Graterford. Id. Upon receiving plaintiff's request form, Shaylor wrote the grievance number, 75442, at the top of the page. Id. at ¶ 5. Instead of treating the request form as an appeal and forwarding it to the Superintendent, Shaylor wrote on the inmate request form "Ms. Knauer - You are considered the Grievance Officer and provided the response originally to Mr. Abrahams grievance." See Inmate's Request To Staff Member from plaintiff to Grievance Officer (Mar. 2, 2004) (Pl.'s Ex. B). In Shaylor's affidavit, she asserted that she did not consider plaintiff's request form an appeal because it did not conform with the Inmate Grievance System Policy. Shaylor Aff. ¶ 6. Instead, she believed that plaintiff was seeking "clarification of the findings of . . . Julie Knauer's response" to Grievance Number 75442. Id. at ¶ 4.

There is no evidence in the record that plaintiff ever received a response from Knauer. The only response he received was the note Shaylor put on the form asking Knauer to elaborate on her response to Grievance Number 75442. Pl.'s Br. at 3. Plaintiff filed a second grievance, number 135489, on November 14, 2005. See Grievance No. 135489 from plaintiff to Wendy Moyer (Nov. 14, 2005) (Pl.'s Ex. C). In his second grievance, plaintiff requested the name and title of the medical official who treated him at the January 30, 2004 sick call. Id. He also asked whether that person was "an employee of SCIG, or Prison health (sic) Services." Id. Knauer responded to Grievance number 135489 on November 21, 2005. See Official Inmate Grievance Initial Review Response from Knauer to plaintiff (Nov. 21, 2005) (Pl.'s Ex. C). She informed plaintiff that he had seen "Dr. Germaine, a PHS employee . . . at sick call . . . R.N. Sokolski, a DOC employee . . . and Physician Assistant Korszniak, a PHS employee." Id.

## STANDARD OF REVIEW

Summary judgment will be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that

party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The party moving for summary judgment bears the burden of demonstrating that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Celotex, 477 U.S. at 322-23. If the movant sustains its burden, the nonmovant must set forth facts demonstrating the existence of a genuine dispute. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). A dispute as to a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). A fact is "material" if it might affect the outcome of the case under governing law. Id.

To establish "that a fact cannot be or is genuinely disputed," a party must:

> (A) cit[e] to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) show[ ] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). The adverse party must raise "more than a mere scintilla of evidence in its favor" in order to overcome a summary judgment motion and cannot survive by relying on unsupported assertions, conclusory allegations, or mere suspicions. Williams v. Borough of W. Chester, 891 F.2d 458, 460 (3d Cir. 1989). The "existence of disputed issues of material fact should be ascertained by resolving all inferences, doubts and issues of credibility against" the movant. Ely v. Hall's Motor Transit Co., 590 F.2d 62, 66 (3d Cir. 1978) (citations and quotation marks omitted).

DISCUSSION

Defendants argue that I must enter judgment in their favor because plaintiff did not exhaust his administrative remedies with respect to his Eighth Amendment claims. Plaintiff disagrees, arguing that because the administrative officer never responded to his appeal he had no administrative remedies available to him and therefore had satisfied the exhaustion requirement.

I.  Exhaustion of Administrative Remedies

The Prison Litigation Reform Act provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. §1197e(a); see Powe v. Shovlin, No. 3:10-2534, 2011 WL 398403, at *4 (M.D. Pa. Feb. 2, 2011).  "[E]xhaustion is now required for all 'action[s] . . . brought with respect to prison conditions,' whether under §1983 or 'any other Federal law.'"  Davis v.Warman, 49 F. App'x 365, 367 (3d Cir. 2002), citing Booth v. Churner, 532 U.S. 731, 739-41 (2001) (affirming the decision in Booth v. Churner, 206 F.3d 289 (3d Cir. 2000), which held that excessive force is a "prison condition" for section 1997e(a) purposes); accord Porter v. Nussle, 534 U.S. 516, 532 (2002) ("the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.").

The Court of Appeals has interpreted the exhaustion language of section 1997a(e) to include a procedural default component.  Spruill v. Gillis, 372 F.3d 218, 230 (3d Cir. 2004) ("We believe Congress's policy objectives will be served by interpreting section 1997e(a)'s exhaustion requirement to include a procedural default component.").  The procedural default rule requires

that inmates "fully satisfy the administrative requirements of the inmate grievance process," Powe, 2011 WL 398403 at *5, rather than merely terminate "all administrative grievance proceedings." Spruill, 372 F.3d at 230. This rule prevents a prisoner from evading the exhaustion requirement "by simply letting the time to present his grievance expire." Id. at 228; see Jetter v. Beard, 183 F. App'x 178, 180 (3d Cir. 2006) (holding that an inmate's claims procedurally defaulted where he filed his initial grievance after the fifteen working day period mandated by the prison); see also Bolla v. Strickland, 304 F. App'x 22, 23 (3d Cir. 2008) (barring a prisoner from bringing a section 1983 claim in federal court where he correctly filed an initial grievance but did not file either of his two appeals required under the Pennsylvania grievance system.)

"Proper exhaustion demands [not only] compliance with an agency's deadlines . . . [but with] other critical procedural rules . . . [as well] because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Torrence v. Thompson, No. 10-4106, 2011 WL 2164124, at *2 (3d Cir. June 3, 2011), quoting Woodford v. Ngo, 548 U.S. 81, 90-91 (2006). In Torrence, the plaintiff appealed his initial grievance, but had not included paperwork required by prison rules. Specifically, he had not included "(1) a copy of the initial grievance, signed and dated; (2) the initial review response/rejection by the Grievance Officer and the inmate's appeal to the Facility Manager, signed and dated; and (3) the Facility Manager's decision/response." Id. at *1. The Court found that because plaintiff had not completed "the required paperwork for his final appeal . . . it is thus undisputed that he defaulted . . . ." Id. at *2.

The inmate grievance process at SCI-Graterford is defined by the Pennsylvania Department of Corrections Policy DC-ADM 804. See DC-ADM 804 at part VI. The policy outlines a three-tier grievance procedure. Id. First, the inmate is required to fill out an initial

grievance on a DC-804, Part 1 - Grievance Form. Id. at part (VI)(A)(1)(f-i). The grievance form must include "a statement of the facts relevant to the claim" and the form must be filed with the Facility Grievance Coordinator. Id. If the inmate is dissatisfied with the initial review decision, he or she may appeal to the Facility Manager. Id. at part (VI)(C)(1)(b). The policy requires that an inmate label the appeal as such on the document and "clearly identify the Initial Review decision and the basis for the appeal." Id. at part (VI)(C)(1)(e). The final step of the appeals process requires an appeal to the Secretary of the Department of Corrections Office of Inmate Grievances and Appeals. Id. at part (VI)(D)(1).

In the present case, plaintiff's grievances did not comply with DC-ADM 804 for two reasons. First, it is undisputed that he never filed a third-level appeal to the Secretary's Office of Inmate Grievances and Appeals. Def.'s Br. at 3; Pl.'s Br. at 3.

Second, plaintiff did not properly submit a second-level appeal to the facility manager; he instead submitted an inmate request form to Shaylor. Plaintiff's inmate request form was non-compliant with the rules set out in DC-ADM 804 for three reasons. First, plaintiff's appeal was filed on a DC-135A Form (Inmate's Request To Staff Member) instead of the Official Inmate Grievance Form. Second, the appeal was specifically addressed to "Grievance Officer" instead of the Facility Manager who is responsible for reviewing the second-level appeal. Finally, plaintiff's submission never clearly identified it as an appeal. In light of these procedural errors, I find that plaintiff procedurally defaulted during the administrative exhaustion process. As noted by the Court in Torrence, "a procedurally defective appeal does not satisfy the exhaustion requirement of section 1997(e)." Torrence, 2011 WL 2164124, at *2, citing Spruill, 372 F.3d at 230.

II.  Exceptions to the Total Exhaustion Requirement

Plaintiff argues that although he did not satisfy the requirements of AC-ADM 804, an exception applies. "An inmate can defeat a claim of failure to exhaust only by showing he was misled or that there was some extraordinary reason he was prevented from complying with the statutory mandate." Id. (internal quotations omitted), quoting Davis v. Warman, 49 F. App'x 365, 368 (3d Cir. 2000); accord Candido v. Hogsten, 315 F. App'x 405, 407 (3d Cir. 2009) ("when prison officials thwart an inmate's attempt to utilize his administrative remedies, those remedies are unavailable to the inmate for purposes of exhaustion"); Tony v. Bledsoe, No. 10-3471, 2011 WL 1828380, at *3 (3d. Cir. May 5, 2011), citing Miller v. Norris, 247 F.3d 736, 740 (8th Cir. 2001) ("[A] remedy that prison officials prevent a prisoner from 'utilizing' is not an 'available' remedy under section 1997e(a) . . . ."). Plaintiff argues that he is relieved of the exhaustion requirement because he never received a response to his inmate request form. Courts have held that "a plaintiff who files grievances and receives no response has exhausted his or her remedies." Carter v. Morrison, No. 06-3000, 2007 WL 4233500, at *7 (E.D. Pa. Nov. 28, 2007); accord Brown v. Lewis, No. 10-2050, 2011 WL 1584059, at *3 (E.D. Pa. Apr. 27, 2011) (holding that an inmate who filed proper grievance forms had exhausted his available administrative remedies where there was no evidence in the record that he ever received a response). I find that under the circumstances of this case the exception is not applicable.

When an inmate procedurally defaults on his claim, an unanswered grievance will not relieve the inmate from his exhaustion requirement. See Booth v. Loren, No. 02-6752, 2007 WL 2668898, at *12 (E.D. Pa. Sept. 6, 2007) (holding that plaintiff did not exhaust his administrative remedies where the Superintendent did not respond to a grievance that the prison had no record of receiving.). I find Romano v. Tolson, No. 06-573, 2007 WL 1830896, at *4 (D. Del. June 25, 2007), instructive on this point. There, the plaintiff argued that he had exhausted his

administrative remedies because he had filed a grievance with the Warden but had never received a response. The Court disagreed and found that plaintiff had failed to exhaust his claims because he had not "initiate[d] proper exhaustion under . . . Prison Grievance Procedure." Id. As the Court explained, "the warden does not become involved in the grievance procedure until informal resolution attempts fail . . . ." Id.

In the present case, plaintiff's inmate request form did not constitute an appeal under DC-ADM 804. Because DC-ADM 804 requires an appeal to the Facility Manager, it is irrelevant to the question of exhaustion whether or not Knauer ever responded. Even if she had, plaintiff still would have procedurally defaulted on his claim because he never filed a copy of his "appeal"[2] with the Facility Manager. Plaintiff still had all the administrative remedies at the prison available to him regardless of Knauer's response and therefore cannot claim an exception to the exhaustion requirement

CONCLUSION

For the reasons set forth above, I will grant defendants' motion for summary judgment.[3]

An appropriate Order follows.

---

[2] I note again that the inmate request form plaintiff directed to Shaylor was not an appeal under DC-ADM 804

[3] In light of my decision on the administrative exhaustion issue, I need not reach the questions of whether plaintiff properly identified defendants on his initial grievance and whether plaintiff adequately identified an unconstitutional PHS policy or practice on his initial grievance.
 I also acknowledge plaintiff's argument that as of the date he filed his response to this motion he had not yet deposed the Pennsylvania Department of Corrections or PHS. That agreement is moot, however, because he has had ample opportunity by now to depose the necessary parties. Indeed, under the terms of the scheduling order, oral fact discovery closed on May 13, 2011. See Stipulated Order To Extend Scheduling Order Deadlines (April 25, 2011).